Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1356 | **DATE** | 3/13/2001 |
| **CASE TITLE** | Hojnacki vs. Klein-Acosta, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons set forth on the attached order, the motion of defendants Klein-Acosta and O'Brien for summary judgment (22-1) is granted, and the motion of defendants Addus and Heaney for summary judgment (20-1) is granted in part and denied in part. Plaintiff's motion for summary judgment (25-1) is denied. Summary judgment is entered in favor of all defendants on Count I, in favor of Klein-Acosta, O'Brien, and Heaney on Count 5, and in favor of Heaney on Count 6. Status hearing set to 3/22/01 at 9:30 a.m. to schedule trial date.
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | |
|---|---|---|---|
| | No notices required. | | number of notices |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | | MAR 15 2001 / date docketed |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | | docketing deputy initials |
| | Copy to judge/magistrate judge. | | |
| OR | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials |

Document Number 40

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IRENE HOJNACKI,                              )
                                             )
         Plaintiff,                          )
                                             )
    vs.                                      )    Case No. 00 C 1356
                                             )
DONNA KLEIN-ACOSTA, DORETTA                  )
O'BRIEN, ADDUS HEALTHCARE,                   )
INC., and MARK S. HEANEY,                    )
                                             )
         Defendants.                         )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Defendants Donna Klein-Acosta, Doretta O'Brien, Addus Healthcare, Inc., and Mark S. Heaney have moved for summary judgment on Count 1 of plaintiff Irene Hojnacki's complaint, which sets forth a claim under 42 U.S.C. §1983 for violation of Hojnacki's due process rights. Klein-Acosta and O'Brien have also moved for summary judgment on Hojnacki's only other claim against them, Count 5, brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-5(f). Heaney also seeks summary judgment on Count 5 and Count 6, a claim under the Age Discrimination in Employment Act, 29 U.S.C. §626(c), and he seeks dismissal of Hojnacki's state law claims against him for lack of subject matter jurisdiction. Hojnacki has moved for summary judgment on the question of whether the IDOC was her "employer" for purposes of her §1983 claim.

For the reasons stated below, the Court grants defendants' summary judgment motions but declines to dismiss the state law claims against Heaney.

## BACKGROUND

Dr. Hojnacki learned in 1996 that the Illinois Department of Corrections (IDOC) was seeking a Medical Director for the women's prison at Dwight, Illinois. She called the prison to make an appointment to discuss the job and eventually interviewed with a state-employed Medical Director. The Medical Director sent Hojnacki to Coastal Correctional Healthcare, a private company that contracted with various prison facilities to provide medical care, to fill out an application for the Medical Director position, and ultimately, Hojnacki got the job.

Hojnacki signed a contract with Coastal providing that she was a Coastal employee, with Coastal retaining the right to transfer her to a correctional facility other than Dwight at any time. Coastal paid Hojnacki's wages and set her work hours. The contract made clear that while working at Dwight, Hojnacki represented Coastal, and that she was prohibited from doing anything, such as breaking a rule of the correctional facility, that could strain the relationship between Coastal and Dwight.

When defendant Addus Healthcare, Inc. later replaced Coastal as the medical service provider at Dwight, Hojnacki contracted with Addus for the Medical Director position. This agreement provided that Hojnacki was an at-will employee of Addus, which paid her salary, allowed her a specified amount of time off, and required that her medical services conform to state regulations as well as the regulations of the correctional facility. Hojnacki was supervised by Doretta O'Brien, the Health Care Unit Administrator at Dwight, and by Diane Kumarich, the regional director of operations for Addus.

In March 1999, O'Brien accused Dr. Hojnacki of giving a can of soda to an inmate in violation of the IDOC's security rules. On March 11, 1999, defendant Donna Klein-Acosta, Dwight's warden, wrote a memorandum to defendant Mark S. Heaney, general manager of Addus, stating:

> This is to advise you that I have been informed that Medical Director Irene Hojnacki violated the policy and procedures of the Dwight Correctional Center. Dr. Hojnacki brought 7-Up into the institution and gave it to an inmate which is considered trafficking with an inmate. She had been previously advised that this procedure is against the policies of the institution.
>
> Bringing items into the institution for an inmate is clearly a very serious matter as well as deliberately continuing the procedure after being warned that it is inappropriate behavior. It is recommended that appropriate disciplinary action be taken that would disallow her entrance into the Dwight Correctional Center.

After receiving Klein-Acosta's memorandum, Heaney fired Hojnacki because she could no longer enter the prison and Addus had no other position for her.

Hojnacki denied that she brought 7-Up to the prison and requested a hearing from Klein-Acosta so that she could prove her innocence; she also contended that Klein-Acosta and O'Brien had conspired against her. When her request for a hearing was refused, she filed this lawsuit claiming that her reputation was damaged because Klein-Acosta and O'Brien leaked news of the charge and the action taken against her to prison employees and that the news subsequently traveled throughout the prison, the town of Dwight, and eventually to Chicago.

## DISCUSSION

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

3

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, we construe all facts in the light most favorable to the nonmoving party, and draw "all reasonable and justifiable inferences" in that party's favor. *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "If the non-moving party bears the burden of proof on an issue, ... that party may not rest on the pleadings and must instead show that there is a genuine issue of material fact." *Larimer v. Dayton Hudson Corp.*, 137 F.3d 497, 500 (7th Cir. 1998); *see* Fed. R. Civ. P. 56(e). We deal first with defendants' motions.

1.  **Count 1**

In Count 1 of Hojnacki's complaint, she alleges that defendants deprived her of liberty (her reputation), without due process of law when they failed to give her a name-clearing hearing. In *Wisconsin v. Constantineau*, 400 U.S. 433 (1971), the Supreme Court held that "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Id.* at 437. Although this suggests that Hojnacki should have received a name-clearing hearing before the defendants fired her, the Court later limited its holding to explain that damage to reputation in and of itself may not trigger due process concerns necessarily requiring a hearing. In *Paul v. Davis*, 424 U.S. 703 (1976), the Court explained "the words 'liberty' and 'property' as used in the Fourteenth Amendment do

4

not in terms single out reputation as a candidate for special protection over and above other interests that may be protected by state law . . . .[Our cases do] not establish the proposition that reputation alone, apart from some more tangible interests such as employment, is either 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." *Id.* at 701. It is only when, because of state action, a right or status previously recognized by state law is distinctly altered or extinguished that the procedural guarantees contained in the Due Process Clause are triggered. *Id.* at 710-11.

Thus, a government employee's liberty interest is implicated when the government, in terminating the employee, makes a charge that might seriously damage the employee's standing or association in the community or impose on the employee a stigma that would preclude her from obtaining comparable work. *See, e.g., Board of Regents v. Roth*, 408 U.S. 564, 573 (1972); *Dziewior v. City of Marengo*, 715 F. Supp. 1416, 1423 (N.D. Ill. 1989). To show that her due process rights were violated, the government employee must establish that she was dismissed from a job or deemed ineligible for one; that the government made a false charge that stigmatized her; that the charge was published or publicly disseminated; and that the employee was deprived of a name-clearing hearing. *See Dziewior*, 715 F. Supp. at 1423 (citing cases). To satisfy the stigmatizing element, the statements or charges must be more than just unflattering or insulting, and a mere charge of incompetence does not suffice; rather, the charge must involve a claim of dishonesty, immorality, or unprofessional conduct, or the like, such that the employee is effectively left unemployable in her chosen line of work or is

5

precluded from an entire class of opportunities. *Id.* at 1424 (citing *Roth*, 408 U.S. at 573). *See also, e.g., Nickum v. Village of Saybrook*, 972 F. Supp. 1160, 1168 (C.D. Ill. 1997).

As we have stated, the right to a name-clearing hearing based on deprivation of a liberty interest in this context is limited to government employees or others who are stigmatized while being deprived of some right or status that exists under the law. *See, e.g., Ferencz v. Hairston*, 119 F.3d 1244, 1249 (6th Cir. 1997).[1] In this case, Hojnacki does not point to any tangible interest that she lost other than her job. Thus, she can survive summary judgment on Count 1 only if she provides evidence from which a jury could find that she was an employee of the IDOC.

Hojnacki concedes that she was employed by Addus and that she was technically an independent contractor of the IDOC. But, she argues, that status existed on paper only. In reality, she argues, she was either loaned from Addus to the IDOC or that the two were her joint employers. She claims that the IDOC exerted so much control over

---

[1] Plaintiff has cited no case in which a person working as an employee of a company doing business with a government agency has been held to have been deprived of a liberty interest when her employment with the company was terminated as the result of allegations by the government. In *Kartseva v. Department of State*, 37 F.3d 1524 (D.C. Cir. 1994), the court held that a non-government employee *could* have been deprived of a liberty interest when she was denied a government-created status – a security clearance – and lost her job because of it. But even then the court did not definitively hold that the plaintiff had been deprived of liberty; rather it remanded for consideration of whether the government's action had the effect of "automatically excluding her from a definite range of employment opportunities with State or other government agencies" or "broadly precluding her from continuing in her chosen career of a Russian translator." *Id.* at 1527. Hojnacki is faced with a summary judgment motion, not a motion to dismiss as in *Kartseva*, and she has provided no admissible evidence from which a reasonable jury could conclude that she has actually been deprived of the opportunity for employment in the field of medicine as a result of the IDOC's actions.

her work that it should be considered her employer for purposes of the due process analysis. In deciding whether this is so, we look to common law standards concerning an employee's status. *See Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318, 322-23 (1992). In *Alexander v. North Shore Medical Hospital*, 101 F.3d 487, 492 (7th Cir. 1997), the Seventh Circuit considered whether a physician with staff privileges at a hospital should be considered to be a hospital employee for purposes of Title VII. The court focused on five factors in making its determination:

> (1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work, (2) the kind of occupation and nature of the skill required, including whether skills are obtained in the workplace, (3) responsibility for costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations, (4) method and form of payment and benefits, and (5) length of job commitment and/or expectations.

*Alexander*, 101 F.3d at 492 (quoting *Ost v. West Suburban Travelers Limousine, Inc.*, 88 F.3d 435, 438 (7th Cir. 1996)).

Starting with the second factor, the fact that Hojnacki held a position in which she exercised her own medical judgment should not weigh heavily in the analysis, because she was hired precisely for this purpose. *See Ezekiel v. Mitchell*, 66 F.3d 894, 902 (7th Cir. 1995). And Hojnacki should not automatically be considered an independent contractor of the IDOC merely because she learned her profession at medical school.

Turning to factors (3) and (4), it appears from Addus' contract that the company provided the medical supplies and physician services at the Dwight medical unit. In addition, Addus paid Hojnacki's wages and provided her fringe benefits. If Hojnacki was a state employee, she would have had to fill out a state application and would have been

7

paid according to a state-established wage scale, neither of which was the case. Further, Hojnacki indicated that she was an employee of Addus on her W-2 tax forms. Thus the third and fourth factors of the *Alexander* test suggest that the IDOC was not Hojnacki's employer.

At the time she was terminated by Addus, Hojnacki had been the Medical Director at Dwight for several years; she says she had planned to remain in this position at the prison for the foreseeable future. But Hojnacki was aware that she could lose the Medical Director position at any time, whether because the IDOC changed contractors (as it did more than once during the time that Hojnacki worked at Dwight), or because Addus terminated her at-will employment. Thus the fifth factor likewise tilts against Hojnacki's claim that she was an IDOC employee.

The first factor, involving who controls the plaintiff's work, weighs the most heavily in the analysis. *See Alexander*, 101 F.3d at 492-93. Hojnacki did not have a supervisor as such; she was the Medical Director and was supposed to make independent medical decisions. But Addus set her work schedule, and it was her contract with Addus that made her subject to the IDOC's rules and regulations. Indeed, the IDOC did not bar Hojnacki from the prison; rather it recommended that Addus do so. The fact that Hojnacki was subject to the prison's security regulations – her main argument against summary judgment – does not make her an employee of the IDOC. In *Lambertsen v. Utah Department of Corrections*, 79 F.3d 1024, 1027 (10th Cir. 1996), a Title VII case, the Tenth Circuit held that a teaching assistant who worked for a school district that provided classes at a prison was not an employee of the prison simply because she had to

8

follow the prison's rules. The same court reached a similar conclusion in *Zinn v. McKune*, 143 F.3d 1353 (10th Cir. 1998), a Title VII case which like this one involved an employee of a private firm under contract to provide medical care at a prison. The court stated that although "valid penological measures imposed to ensure safety and security within a facility may require a worker to fulfill certain conditions, those conditions do not rise to the level of 'control' for purposes of determining a worker's employment status with the correctional facility itself." *Id.* at 1357-58.[2]

For these reasons, the Court concludes that the evidence, viewed in the light most favorable to Hojnacki, cannot establish that she was an employee of the IDOC and therefore entitled to the constitutional protections owed to state employees who are deprived of liberty interests. The Court therefore grants summary judgment in defendants' favor on Count 1.

2.  **Counts 5 and 6**

In Counts 5, Hojnacki makes a Title VII gender discrimination claim against Addus, Heaney, Klein-Acosta, and O'Brien; in Count 6, she makes an age discrimination claim against Addus and Heaney. Neither of these claims may properly be brought against the individual defendants. Title VII and ADEA claims may be brought only

---

[2] There is one Title VII case in this district which is arguably contrary to *Lambertsen* and *Zinn* in this regard. In *Jensen v. Illinois Department of Corrections*, No. 97 C 50198, 1999 WL 218561 (N.D. Ill. April 6, 1999), the court concluded that a nurse hired by a private contractor to work at the IDOC could maintain a Title VII claim against the agency. *Id.* at *3. The court based this conclusion, however, on the fact that the plaintiff was directly supervised by state employees such that the IDOC had great discretionary control over her conduct. *Id.* The same is not true here. Hojnacki, as medical director, exercised her own medical judgment, and there is no indication that any state employee told her how to do her job.

9

against the plaintiff's employer; individuals (such as supervisors) cannot be named as defendants under these statutes. *See Geier v. Medtronic, Inc.*, 99 F.3d 238, 244 (7th Cir. 1996); *Williams v. Banning*, 72 F.2d 552, 554-55 (7th Cir. 1995). The Court therefore grants summary judgment in favor of Heaney, Klein-Acosta, and O'Brien on Count 5 and in favor of Heaney on Count 6.

### 3. Counts 2, 3, and 4

In light of the summary judgment rulings, we are left with a complaint that includes two federal claims (under Title VII and the ADEA) against Addus only, and three state law claims against Addus and Healey. Healey argues that there is no proper jurisdictional basis to keep him in the case. The Court disagrees. Because the Court has jurisdiction of the Title VII and ADEA claims against Addus, it also has supplemental jurisdiction under 28 U.S.C. §1367(a) of the state law claims against Addus, as those claims arise from the same transactions as the federal claims and thus form part of the same case or controversy. Healey is a co-defendant with Addus on the state law claims. Under §1367(a), the court's supplemental jurisdiction "include[s] claims that involve the joinder or intervention of additional parties." *See, e.g., Ammerman v. Sween*, 54 F.2d 423, 424 (7th Cir. 1995). It would make no sense to require Hojnacki to litigate her claims arising from her termination in two separate forums. The Court denies Healey's motion to dismiss the state law claims against him.

### CONCLUSION

For the foregoing reasons, the motion of defendants Klein-Acosta and O'Brien for summary judgment [22-1] is granted, and the motion of defendants Addus and Heaney

10

for summary judgment [20-1] is granted in part and denied in part. Plaintiff's motion for summary judgment [25-1] is denied. Summary judgment is entered in favor of all defendants on Count 1, in favor of Klein-Acosta, O'Brien, and Heaney on Count 5, and in favor of Heaney on Count 6. The case is set for a status hearing on March 22, 2001 at 9:30 a.m. for the purpose of setting a discovery and trial schedule.

MATTHEW F. KENNELLY
United States District Judge

Date: March 13, 2001